# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0623V

|  |  |
|---|---|
| MARCIE BENNETT,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: November 15, 2023 |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Darryl R. Wishard*, U.S. Department of Justice, Washington, DC, for Respondent.

### **DECISION ON ATTORNEY'S FEES AND COSTS**[1]

On January 12, 2021, Marcie Bennett filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act". Petitioner alleged that she suffered a left shoulder injury related to vaccine administration ("SIRVA") resulting from an influenza vaccine received on September 18, 2019. Petition at 1.

After discussing the evidence showing Petitioner more likely received the flu vaccine alleged as casual in her *right* (rather than left) shoulder, with a non-covered

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

version of the pneumococcal vaccine[3] in her *injured left* shoulder, I allowed Petitioner the opportunity to obtain further documentation to support her claim. ECF No. 15. However, more detailed vaccine records obtain several months later only confirmed the covered vaccine had been administered . Exhibit 8 at 7, 9, 11. Thus, Petitioner filed a motion on May 24, 2023, requesting that I dismiss her claim. ECF No. 24. Later that same day, I granted the motion. ECF No. 25.

On October 2, 2023, Petitioner filed a request for an award of $10,530.29 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees at 2, ECF No. 31. Petitioner did not address the statutory requirements of good faith and reasonable basis, however - prerequisites for any fees award in unsuccessful cases. *See* Section 15(e)(1).

Respondent responded the same day, stating that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Respondent's Response to Petitioner's Application for Attorneys' Fees and Costs at 2, ECF No. 32. Petitioner did not file a reply.

For the reasons discussed below, I find that Petitioner has failed to establish there was a reasonable basis for her claim. Thus, she is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

### I.      Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

---

[3] "There are two types of pneumococcal vaccines . . . pneumococcal conjugate and polysaccharide vaccine[s]." *Bundy v. Sec'y of Health & Hum. Servs.*, No. 12-769V, 2014 WL 348852, at *1 (Fed. Cl. Spec. Mstr. Jan. 8, 2014). Only pneumococcal conjugate vaccines, routinely administered to children, are covered by the Vaccine Program. *See Morrison v. Sec'y of Health & Hum. Servs.*, No. 04-1683, 2005 WL 2008245, at *1 (Fed. Cl. Spec. Mstr. July 26, 2005) (describing how and when pneumococcal conjugate vaccines were added to the Vaccine Table). When pneumococcal conjugate vaccines were added to the Vaccine Injury Table, the notice specifically stated that "polysaccharide-type pneumococcal vaccines are not covered under the VICP or included on the Table." National Vaccine Injury Compensation Program: Addition of Pneumococcal Conjugate Vaccines to the Vaccine Injury Table, 66 Fed. Reg. 28166.
.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries - although here only reasonable basis is at issue.[4] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at \*6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at \*1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II"*), *aff'd without op.*, *slip op.* 22-1737 (Fed.

---

[4] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at \*5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

### II.    Analysis

The medical records filed in this case establish that Petitioner received the flu vaccine in her right deltoid, approximately one hour before an appointment with her primary care provider ("PCP") in Phoenix, Arizona, on September 18, 2019. *Compare* Exhibit 3 at 5; Exhibit 8 at 11 (flu vaccine record) *with* Exhibit 5 at (appointment at 11:00am). Two hours later (likely after seeing the PCP), she was administered a pneumococcal vaccine in her left deltoid. *Compare* Exhibit 5 at 19; Exhibit 8 at 9 *with* Exhibit 5 at 39 (appointment at 11:00am). The vaccine record notes that the pneumococcal vaccine at issue was manufactured by Merck & Co. LLC - and therefore was not the version of the vaccine covered by the Vaccine Program.[5] Exhibit 5 at 19; Exhibit 8 at 9. A later obtained consent form confirms the flu vaccine's situs information. Exhibit 8 at 7.

When she first sought treatment from her PCP for left shoulder pain, Petitioner attributed her injury to the pneumococcal vaccine she received. Exhibit 5 at 51. She added that she received the flu vaccine in her opposing, right arm on the same day and had no problems with that vaccination. *Id.* Noting that Petitioner's increased left shoulder pain was likely due to the vaccine she received, the PCP ordered x-rays and instructed Petitioner to take Ibuprofen for the pain. *Id.* at 49.

When Petitioner next saw her PCP, on October 28, 2019, it was for treatment of several conditions which included her left shoulder pain. Exhibit 5 at 43-47. However, it appears the PCP simply answered Petitioner's questions, providing her with information but no further treatment. *Id.* at 44-45. At the visit, Petitioner reported that she would be

---

[5] The Merck & Co LLC manufactures the "Pneumovax 23" vaccine, a pneumococcal polysaccharide vaccine, also referred to as a pneumococcal vaccine, polyvalent, which is not covered by the Vaccine Program. https://www.fda.gov/BiologicsBloodVaccines/Vaccines/ApprovedProducts/ucm179996.htm (last visited Nov. 9, 2023).

4

traveling to California on November 6, 2019, to see her brother who was suffering from cancer. *Id.* at 45.

Petitioner did not seek treatment again for her left shoulder pain until she underwent an MRI on February 18, 2020. That record shows that, for the first time, Petitioner now attributed her left shoulder pain to the *flu*, rather than *pneumococcal*, vaccine. *Id.* at 20.

On March 5, 2020, Petitioner was seen in the emergency room of a medical facility close to her home for left shoulder pain following receipt of an immunization. Exhibit 6 at 6. It appears Petitioner brought her MRI results with her. *Id.* At a follow-up appointment five days later at a medical facility in Wickenburg, Arizona (approximately one hour northwest of downtown Phoenix), Petitioner again attributed her left shoulder pain to the *flu* vaccine she received. Exhibit 7 at 7. Billing records show Petitioner contacted Petitioner's counsel approximately one month later, on April 13, 2020. Motion at 4.

The vaccine records and Petitioner's report of a causal connection between her symptoms and the pneumococcal vaccine when first seeking treatment at the same clinic where she received the vaccines constitute the best situs evidence, and render the claim untenable from the outset. Petitioner offered no persuasive rebuttal evidence to the contrary. And I assign little probative value to Petitioner's later assertions, approximately five months post-vaccination, and made to other providers, that she her pain was due to the *flu,* rather than *pneumococcal,* vaccine. Thus, the present record does not demonstrate the reasonable basis required for an attorney's fees and cost award.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs even to an unsuccessful litigant as long as the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing her claim. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED</u>.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
